The Circuit Court delivered the following decree :
The first question which arises is, whether the legacy to the wife of the testator is a specific legacy, and therefore not liable to the payment of debts till tíre rest of the property be exhausted. The words of the will are : “ Í leave her, (speaking of his wife,) the whole of the property that she brought me, (except John and Maurice,) to her and her heirs forever.” Upon considering these words and the cases cited, I have no doubt thilt they constitute a specific bequest 5 'and this construction is strengthened by the other circumstances of the case.— It is true that the general leaning of the Court is against considering legacies as specific, because of the consequences, as is laid down by Lord Hardwicke in the case of Ellis and Walker, Ambler 3X0. But if the words clearly indicate an intention to separate the particular thing bequeathed from the general property of the testator, this will make it specific and the intention shall prevail. Even pecuniary legacies may be made specific, as a bequest of a certain sum of money in a certain bag or chest, see the case of Lawson vs. Stitch, 1 Atk. 508, or the bequest of a sum of money in the hands of B. see Hinton vs. Pinke 1 P. Williams 540, or of 20001. the balance due to testator from his partner on the last settlement between them, provided testator did not draw it out of trade, Ellis vs. Walker, Ambler 310. So a bequest of a bond or of testator’s stock in a particular fund, Asburner vs. Maguire, 2 Bro. Ch. Rep. 108, Aveylyn vs. Ward, 1 Vesey 425; or a legacy to be paid out of the profits of a farm which testator desired to be carried on, Maquet vs. Maquet, 2 Bro. Ch. R. 125, and *49 also see 2 Fonblanque 374, 5. Apply these doctrines and authorities to the bequest to the wife, and it is manifest that it is a specific legacy, “The whole of the prepei'ty that she brought me,” is plainly indicative of an intention to separate the thing bequeathed dg|pm the general property of the testator ; and it is easy to ascertain what the wife did carry in marriage to the testator. The maxim, “ id certum est quod certum reddi potest,” applies decisively to this case. The circumstance too that this is a bequest to a wife, who has nothing else given to her absolutely, (for whatever else is given is only fiir life,) would lead the Court to lay hold of •any words which would bear out the construction of the bequest being specific. It is true that the bequests to the wife, not being in lieu and bar of dower,' the wife does not stand on the strong ground of a purchaser. Butth.re is enough to constitute this bequest a specific legacy, and consequently not to abate with the other legacies. But admitting this to he specific legacy two' subordinate questions arise ; first, as to a sum of money due to the wife of testator, for which he had obtained a decree in his lifetime, hut had not received the money. It is contended that this does not pass under the words of the bequest to the wife, or partake of the specific character of the rest of the legacy. I am however of opinion that it does pass to the wife, (unless indeed it survived to her,) as not being reduced by the husband into possession. The words of the will are as broad and -comprehensive as possible. « All the proper- . ty that she brought to me,” by which he clearly means all the property he acquired by her in marriage ; and the very terms of the proposition relative to the sum of money for which a decree was obtained by the husband, shew that it was in right of his wife. This sum of money therefore due on the decree, if it did not survive to the wife on the death of the husband without actually receiving it, clearly passed under the bequest to her. Next,, as to the value of one of the negroes which belonged to the wife and was sold by testator in his lifetime. *50 jt was contended on the argument of the cause that the value of this negro still unpaid, would pass to the wife under the general and comprehensive words of the will, as coimse^ we^ expressed it, the fund would re-preseppthe negro. At the trial I was very decidedly of opinion that the wife was not entitled to the value of the negro sold. I considered the sale of the negro equivalent to the extinction of the property even by death, and the words of the will do not say that the testator bequeaths to his wife the value of all the property she brought him, but the property itself. Now if the property is gone, how can it be carried to her under these words ? Nor does the circumstance of the exception on the face of the wlil exclude other exceptions. The counsel ingeniously argued that as the bequest was of all the property, except two negroes who were named, all the other property, besides these two so named must pass under the will, and no other exception could be admitted. To be sure all the property remaining must pass 5 but that which is dead or parted with could not pass; so that this forms an exception in the nature of the thing itself. Upon the whole, I think the value of the negro sold by the testator did not pass to the wife under the words of the will.
The next question is, whether the bequest by the testator to his nephew, John Wigfali, of twenty' negroes, is a specific legacy. It was argued that there was no description or specification of the negroes. That this therefore was not a specific legacy, or that at any rate the negroes of the estate would be liable to the debts before the direct specific legacy given to the wife. I am of opinion that this bequest is a specific legacy. Lord Hardwicke in the case of Purse vs. Snaplin, 1 Atk. 414, 416, 417, says there are two kinds of gifts included under the description of specific legacies ; 1st. When a particular chattle is specifically described and distinguished from all other things of the same kind. 2d. Something of a particular species which the executor may satisfy by delivering something of the same kind. *51 as a horse, a diamond ring, &c. The first kind may he more particularly called an individual legacy ; and if the thing so bequeathed be not found among the testator’s effects, it fails, &c. « The second kind is of a 7 more liberal nature ; it is a legacy consisting of quantity and number, and is not confined to the strictness of the rule,” and this is certainly the law ; and the bequest of 20 negroes, comes within the second kind or class of specific legacies. I presume no question can arise between these two legacies, as to any abatement for payment of debts ; as it is to be hoped the funds will be sufficient to pay the debts, and leave the property intended for the wife, as well as 20 negroes for the legatee John Wigfall, the testator’s nephew. If there should however be a deficiency I am of opinion that the wife must be first satisfied the whole of her legacy. The general rule certainly is that specific legacies of distinct chatties must abate proportionately among themselves, on deficiency of general assets. But I apprehend that there may be and are gradations even among them, depending partly on the nature of the legacies and partly on the intent of the testator which rides pai*amount over all other principles, unless in violation of some rule of law; and it is manifest the testator intended to prefer the wife.
It is therefore ordered and decreed that the property bequeathed to the wife of testator (including the sum of money decreed, and excluding the negro sold by testator) be first paid or delivered over to her representatives, if there be sufficient assetts or funds to pay the debts of testator without resorting to them. Then that the 20 negroes bequeathed-to the nephew John Wigfall, be reserved for him, as a specific legacy, unless the failure of the other funds should make it necessary to resort to them to pay debts. That the land purchased by Samuel Wigfall, from Levy Wigfall and decreed to stand mortgaged shall be sold on the terms stated below, and the proceeds applied to the payment of the debts to Mr. Grainger, -who shall stand as a general bond creditor if *52 ^16 *an(^ deficient. If any surplus, the same to be applied to the payment of other debts. That after ex-haustmg the residuary personal estate, the lands of the testator (the devises of which did not take effect,) be also sold, and the money arising from the sales applied so far as may be necessary to pay the debts of the testator, and next to the payment of the pecuniary legacies» Should there be any surplus from the sales of the residuary personal estate, the same to be paid over of course to the residuary legatees. Should there be any from the sales of the real estate, the same to be paid over to the mother and representatives of the wife of the testator as heirs. And it is further ordered that the minor, A. W. Garden, shall have have six months after his attainment of the age of twenty-one years to shew cause against this decree. It is also ordered that the costs of this suit be paid oiit of the estate generally.
Che ves, for appellant,
contended that the legacy in question was not specific. There are three kinds of legacies : specific, pecuniary and residuary. A legacy of 5000k South Sea stock, of which testator is in pos, session is specific, and is exempt from contribution ; but a legacy of 5000k South Sea stock, generally, is liable to contribute with pecuniary legacies. Cites 1 Atk. 416, Purse vs. Snaplin, 27 Yiner, p. 458, 461, 2 Woode-son, 511, 529, 410,4 Bro. C. C. 349, and argues from these authorities that there is a second class of the legacies called specific, but really not correctly so. They are legacies of quantity, subject to the same rules as pecuniary legacies, and bound to abate with them, in cases of insufficiency of assets to pay alL The case of Bag-shaw vs. Sogers, 4 Ero. C. C. 345, 7, 9, decided by Master of the Bolls, is where testator bequeathed stock generally to one person, and a pecuniary legacy to another. It was decreed that both should abate proportion-ably, on a deficiency of assetts., And some of the cases go further. It has been decided that even bequests of stock of which the testator was in possession, are not necessarily specific. They are sometimes held to be so far pecuniary as to be bound to contribute. The bequest of 20 negro slaves now under discussion, is not specific. It is like a bequest of stock generally, and is bound to contribute with the pecuniary legacies.
*52 From this decree of the Circuit Court the defendant, S. M’Gregor, appealed, on the ground « That the legacy of twenty negro .slaves bequeathed to John Vigfail, is not a specific legacy, otherwise than as distinguished from a residuary bequest, and therefore is liable to be abated in average and proportion, in case of the insolvency of the estate, with the pecuniary legacy of 5í>0L to Susannah M’Gregor.
The appeal on this point came on to be heard before the Court of Appeals, on lTth March, 1810, before the Chancellors James, Thompson and Desaussurc.
Gexhjes, for respondent,
contended that the intention of the testator was clear. He gives his plantation and the 20 negroes in the Same sentence. The devise of the plantation is unquestionably specific ; so must be the bequest of the negroes. They are inseparable, see the 1st Yesey, 422, Avolyn vs. Ward. WigfalPs case is stronger than that of Purse and Snaplin, cited from Atk. for he died in possession of 20 negro slaves j but in that case the testator died without leaving so much stock. — Cites 1 Atk. 434, and 2 Domat 159. .
DiiavtoN, for respondent,
admitted, that if the legacy did not come within Lord Hardwicke’s idea of the specific legacies of the first kind, it is a general legacy and must abate. A specific legacy is a bequest of a particular thing; or of a thing, the species of which is mentioned, and from which the particular thing may be taken or separated. Either would be specific ; as a particular diamond ring,* or ahorse, from a particular stud. The testator in this case coupling the 20 negro slaves with a devise admitted to be specific, (to-wit, the plantation) shews his intent. Having possession of the property bequeathed is also important: that indicates a specific bequest. The devise of the land was of little value without the negroes. The testator knew they were necessary to cultivate it. The specification re-suiting from testator’s saying my stock, my negroes, makes it technically a specific legacy. But the intent may be shewn from circumstances, or other words. A * bequest of 20 negroes, and the testator possessing 20, not otherwise disposed of, the legatee is entitled to those negroes particularly. The executor is not at liberty to buy others and .deliver them to satisfy the legacy. Convenience is on that side of the question, and that has weight. The general provisions of the will, and the bequest of the residue shews that testator contemplated the bequest of the 20 negroes to be taken out of his estate itself. Compare the case of Avelyn and Ward, 1 Ves. 425, with 4 Brown 345. If the legacy be deemed specific, then he admits that if the testator had sold it or it had perished, it would be lost: it would be an ademption. If not specific, then not adeemed. — See the case of Jeffris vs. Jeffris 3 Atk. 122, decided by the Master of Rolls. There is a difference between the cases of corn or sheep from stock in the funds. The death of sheep or negro slaves furnishes no indication of the intent of the testator to revoke, as the sale of stock does, Bequest of stock of which he had not possession, is directory to the executor to purchase so much stock : otherwise illusory. This would be a pecuniary legacy. 3 Woodes, 531. This accords with 3 Atk. 122. Bequest of negro slaves analagous to cases of stock in the funds, and to be governed by the rules applicable to them. The reasons for leaning against specific legacies not sufficient to justify such a leaning. Quote 3 Vesey 309, 310, Selwood vs. Miley.
Mr. SimsoN, for respondent.
He said he was not prepared to give up the distinction made by Lord Hardwicke in Purse and Snaplin, 1 Atkins. Examine the doctrine, see 2 Fonbl. 369, 371. In the case of Partridge vs. Partridge, Cas. Temp. Talbot, 226, 7, a bequest of 10001. So. Sea stock, was held to be specific ; but it was not considered adeemed on account of the testator’s selling out the stock because he bought in again, and left as ranch as he had bequeathed, If the selling out was held to be evidence of intent to revoke, the buying in again was evidence of the intent to restore, see also Ambler 57, Brown vs. Winter, 3 Woodeson, Appendix 11. Sir Joseph Jekyl went even farther than Lord Hardwicke, for he calls such a bequest unqualifiedly a specific bequest. Specific legacies are not always adeemed by the destruction or calling in the thing bequeathed, 4 Ero. C. C. 349, Simmons vs. Yal-lañce, 1 Bro. 565, Ambl. 566, Attorney-General vs. Parkin, 2 Yern. 681, 3 Woodeson 531, (in note.)
The result of the cases seems to be, that where the testator has not the stock, his bequest of so much in stock is not specific. Where he has it, it is. The use of the words my stock, in a bequest, is agreed to be evidence of intent to make the legacy specific. But the word my, preceding stock, does not strengthen the case, as evidence of intent, where the testator has the stock j for he must be supposed to mean his own stock : and so of negro slaves, see the cases in 2 Ero. C. C. 112, Ash-burner vs. Maguire, 2 Vesey, 623, Drinkwater’s case, and 3 Atk. 308. The bequests of negro slaves are like bequests of specific valuables, rings, horses, &c. .Quotes Ambler 57, 3 Woodeson, 531, 3 Yesey, 308, and examines these cases. It does not follow that the change of the property makes an ademption. Testator surely meant to bequeath the negroes he had, and not other ne-groes which he had not. He did not dispose of the 20 ne-groes he had on his plantation to any other person. His intention seems very clear, to give them with the plantation. It was equivalent to saying my negroes, which all the cases agree would have made it specific.
The 5001. legacy to appellant, was certainly meant to be paid out of the residue of the estate ; which residue he bequeaths to the heirs of Mrs. Wigfall $ and the de-visee of the land and 20 negroes is one of those heirs.
Cheves, for appellant, (in reply.)
The argument of the opposite counsel is that this is a specific legacy of the second kind ; but admit this, and the question stili remains whether such legacy Should abate 5 an(* Nardwicke himself says it is a general lega-c7’ and subject to abatement with the pecuniary legacies; see his explanation in Avelyn and Ward, 1 Vesey, 420, 2. The real question between the parties is whether the mere possession of stock and giving a legacy of stock, without any words designating and attaching the ■ legacy to the stock in his possession, is a specific legacy or not» The leaning of the Court is against making legacies specific, on account of the prejudice to other legatees. The later cases say the intention of the testator to make the legacy specific, must be demonstrated.' — • There are no words in this case to shew such intention. The case of Avelyn and Ward is not so well founded as Purse and Snaplin. It turned on peculiar circumstances. In Bonsdon vs. Winter the bequest was of 20001. and testator had exactly 20001. at the time. He sold out and bought ir again. This was held not to he specific, see the cases of Bagshaw vs. Rogers, 4 Bro. C. C. 345, 9, Keech vs. Thorington, 2 Yesey, 560, and Sel-wood vs. Mildmay, 3 Yesey, 628. The testator uses the possessive pronoun my, before the land, not before the ne-groes : presumptive of a different intent, 4 Yesey, 564. The inclination of the Court is against specific legacies ; and to hold a legacy to be general, with reference only to the fund first to. be applied to it. In 4 Yesey, 750, Kirby vs. Potter, legacy of 750Í. to he paid out of my reduced hank annuities, was held not to be specific, though the words <£ part of my stock,” or “ in my stock,” would make it specific. The particular circumstances relied upon in this case to make the legacy specific, do not shew it to be so. Not from the use of the word “ my,” for that is applied to the land, and omitted as to the negroes. Not as to the legacy being negroes, as contradistinguished from stock, and more readily taking the specific form j for negroes are deemed perishable here, more than stock in England; and being changeable and perishable, are not so much the subjects of specific legacy, by general words such as used in this will, see 3 Atk. 122»
After some deliberation, the Chancellors Jame$ and Thompson declared their opinion to be, that the bequest of 30 negro slaves in the testator’s willto John Wigfall, was a specific legacy of the second class mentioned by Lord Hardwicke, in the case of Purse vs. Snaplin, reported in 1 Atk. p. 414, and was liable to abate with the pecuniary legacy. Therefore they reversed the decree of the Circuit Court on this point- Chancellor Desaus-sure adhered to his opinion delivered in the Circuit Court. Chancellor Rutledge, having been prevented from attending, gave no opinion. Chancellor Gaillard having been counsel in the cause at the bar, did not give an official opinion ; but he signified his assent to the opinion of the Judges James and Thompson, on the ground that if the testator had sold his negroes, or they had died, the legatee would have been entitled to receive 20 negroes from the estate, if the assets would have been sufficient, after payment of debts, to have purchased - them. That this was the advantage which the general legatee had over a specific legatee, who would lose his legacy, if it were sold or lost by the testator. On the other hand the general legatee was bound to contribute in case of a deficiency of assets. It was a reciprocation of advantages and disadvantages.